**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 19, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

EDDIE VALLEJOS,

Defendant - Appellee.

No. 04-2216

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CR-03-2241 JP)**

---

Laura Fashing, Assistant United States Attorney (David C. Iglesias, United States Attorney, with her on the briefs), Office of the United States Attorney for the District of New Mexico, Albuquerque, New Mexico, appearing for Appellant.

Bernadette Sedillo, Las Cruces, New Mexico, appearing for Appellee.

---

Before **TACHA**, Chief Circuit Judge, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

A jury found Defendant-Appellee Eddie Vallejos guilty of aiding and abetting carjacking in violation of 18 U.S.C. § 2119 and 18 U.S.C. § 2, and of aiding and abetting the use of a firearm in connection with a crime of violence in violation of 18 U.S.C.

§ 924(c)(1)(A)(ii) and 18 U.S.C. § 2. At the close of the Government's case-in-chief, Mr. Vallejos moved for a judgment of acquittal on both counts. The District Court reserved ruling on the motion, but ultimately granted it after the jury returned a guilty verdict. The Government appeals this judgment of acquittal, arguing that there was sufficient evidence for a reasonable jury to have found Mr. Vallejos guilty of both charges. We take jurisdiction under 28 U.S.C. § 1291, REVERSE the judgment of acquittal, and REMAND with instructions to reinstate the jury's verdict.

## I. BACKGROUND

On May 4, 2003, a car show was held at Cahoon Park in Roswell, New Mexico. That evening, many of the show's participants began to cruise around the park in their cars. At some point, Robert Sanchez and Mr. Vallejos began walking among the vehicles. The two men approached a brown Monte Carlo and had a short conversation with its female occupants; at the end of the conversation, Mr. Sanchez told the women to "watch this." He and Mr. Vallejos then walked up to a truck owned and being driven by Raul Tabarez.

Mr. Sanchez and Mr. Vallejos approached Mr. Tabarez's truck from behind, with Mr. Sanchez walking on the left side toward the driver's door and Mr. Vallejos a few steps behind him. When Mr. Sanchez reached the driver's door, he opened it slightly, stuck a gun into Mr. Tabarez's ribs, cursed in Spanish, and told him to get out of the truck. Mr. Vallejos was standing one foot behind Mr. Sanchez and a little to his right side

-2-

at this point.

Eric Gutierrez was sitting in the passenger seat, and after he saw Mr. Sanchez point the gun at Mr. Tabarez, he opened the passenger door to jump out. He was met by Mr. Vallejos, who had jumped through the bed of the truck over to the passenger side. Mr. Vallejos shoved Mr. Gutierrez as he was on his way out of the truck. Mr. Tabarez then scooted toward the middle of the seat, got out of the truck on the passenger side, and ran away. Mr. Sanchez got into the driver's seat, Mr. Vallejos jumped in the bed, and Mr. Sanchez drove them off at a high rate of speed. A few minutes later, the two men returned to Cahoon Park, where Mr. Sanchez briefly stopped the truck next to the Monte Carlo and told the women inside, "I told you so." After this short encounter, Mr. Sanchez drove off again. Mr. Vallejos was still in the truck.

Eyewitnesses called the police to report the carjacking. Shortly thereafter, an officer saw the truck race by his squad car with Mr. Sanchez driving and Mr. Vallejos in the bed of the truck. When the officer followed the truck, Mr. Sanchez began driving erratically. The truck then came to a sudden stop and Mr. Sanchez and Mr. Vallejos jumped out and ran in different directions. The officer discovered Mr. Vallejos hiding in a nearby shed and arrested him. Mr. Sanchez was also arrested and later pleaded guilty to armed robbery in New Mexico state court, where he was sentenced to five years' imprisonment.

New Mexico apparently did not prosecute Mr. Vallejos in connection with this

event. Instead, the United States charged Mr. Vallejos with two counts under federal law: aiding and abetting carjacking in violation of 18 U.S.C. § 2119 and 18 U.S.C. § 2, and aiding and abetting the use of a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). At trial, Mr. Vallejos's defense centered on his testimony that he did not realize that Mr. Sanchez was forcibly taking Mr. Tabarez's truck; rather, he thought the two men were friends and that they were all just going to get a beer together. In support of this argument, Mr. Vallejos testified that he did not see Mr. Sanchez pull the gun and point it at Mr. Tabarez. Mr. Vallejos pointed out that he was blind in one eye and had impaired vision in the other and that he was not paying attention to what Mr. Sanchez was doing at the time of the carjacking.

Mr. Vallejos moved for judgment of acquittal at the close of the Government's case-in-chief, arguing that there was insufficient evidence to show that he committed either of the crimes charged. The District Court reserved ruling on the motion. The jury then returned a guilty verdict. The District Court ordered briefing on the motion and subsequently granted it. The court reasoned that the Government had to demonstrate that Mr. Vallejos saw Mr. Sanchez draw the gun in order for it to prove that Mr. Vallejos had the requisite intent to aid and abet the carjacking. The District Court determined that the evidence did not support such a finding. The District Court further reasoned that aiding and abetting the use of a firearm requires essentially the same finding—namely, that Mr. Vallejos knew a gun was being used during the carjacking. Therefore, it entered a

-4-

judgment of acquittal on both counts. The Government timely appeals, arguing that there was sufficient evidence for a reasonable jury to find Mr. Vallejos guilty of both crimes beyond a reasonable doubt.

## II. DISCUSSION

A.      Standard of Review

We review de novo the grant of a motion for judgment of acquittal. *United States v. McClatchey*, 217 F.3d 823, 829 (10th Cir. 2000). In so doing, we review the record "and ask only whether, taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find [the defendant] guilty beyond a reasonable doubt.'" *United States v. Scull*, 321 F.3d 1270, 1282 (10th Cir. 2003) (quoting *United States v. Jenkins*, 175 F.3d 1208, 1215 (10th Cir.1999)). In examining the evidence, we must consider the "collective inferences to be drawn from the evidence as a whole." *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997). Furthermore, "while the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994) (quotations and citations omitted). If the Government's proof meets this standard, we must defer to the jury's verdict. *United States v. White*, 673 F.3d 299, 302 (10th Cir. 1982).

B.    Aiding and Abetting a Carjacking

In order for Mr. Vallejos to be found guilty of aiding and abetting carjacking in violation of 18 U.S.C. § 2119 and 18 U.S.C. § 2, the Government must prove four factors beyond a reasonable doubt: (1) the offense of carjacking under § 2119 was committed by some person; (2) Mr. Vallejos associated himself with the carjacking; (3) Mr. Vallejos participated in the carjacking "as something [he] wished to bring about"; and (4) Mr. Vallejos sought to make the carjacking successful. *See United States v. Hanson*, 41 F.3d 580, 582–83 (10th Cir. 1994).

The District Court granted Mr. Vallejos's motion for judgment of acquittal because it determined that there was insufficient evidence for a jury to find that he met the second element of this test. The court concluded that the evidence did not support a finding that Mr. Vallejos possessed the intent necessary to establish that he had associated himself with the carjacking. The Government disagrees with the District Court's conclusion, arguing that the evidence supported an inference that Mr. Vallejos saw Mr. Sanchez point the gun at Mr. Tabarez and that this is sufficient to support the jury's verdict. We begin by examining the intent necessary to aid and abet a carjacking.

This Court has held that, in order to be convicted of aiding and abetting, a defendant must "share[] in the intent to commit the [underlying] offense." *U.S. v. Thurmond*, 7 F.3d 947, 950 (10th Cir. 1993). Although we have never considered the requisite intent for aiding and abetting a carjacking, we note that the First Circuit has

-6-

decided this question, holding that a defendant can be found guilty of aiding and abetting under § 2119 if he "consciously shared some knowledge of the principal's criminal intent." *United States v. Otero-Mendez*, 273 F.3d 46, 52 (1st Cir. 2001). We agree with the First Circuit and therefore conclude that Mr. Vallejos possessed the intent necessary to be found guilty of aiding and abetting a carjacking if he "shared some knowledge" of Mr. Sanchez's intent to commit the carjacking.

In order to be convicted of carjacking under 18 U.S.C. § 2119, a defendant must take a motor vehicle by force or intimidation with "the intent to cause death or serious bodily harm." In *Holloway v. United States*, 526 U.S. 1, 3 (1999), the Supreme Court held that this intent requirement "is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." Thus, the intent necessary to commit a carjacking is a conditional intent: The offender does not have to display a desire to injure the victim so long as the jury could infer that, had the victim refused to give up his car, the carjacker would have injured him.

The District Court concluded that Mr. Sanchez possessed the necessary intent to commit carjacking. Although Mr. Vallejos states on appeal that he "disputes that the Government presented sufficient evidence that Sanchez had a conditional intent to kill or cause serious bodily harm to effect the carjacking," he does not present any arguments supporting this position. We therefore accept the District Court's determination that Mr.

Sanchez possessed the conditional intent necessary to commit the carjacking offense. Because we must determine whether Mr. Vallejos "shared some knowledge" of Mr. Sanchez's criminal intent, we must briefly review the factual basis for the court's conclusion.

We determine whether a defendant possesses the conditional intent necessary to support a carjacking conviction by considering the "totality of the circumstances." *United States v. Malone*, 222 F.3d 1286, 1291 (10th Cir. 2000). In considering this question, a number of circuits have expressly held that the use of a firearm in the carjacking is sufficient to establish the conditional intent necessary to satisfy § 2119. *See United States v. Adams*, 265 F.3d 420, 425 (6th Cir. 2001); *United States v. Williams*, 136 F.3d 547, 552 (8th Cir. 1998); *United States v. Lake*, 150 F.3d 269, 272 (3d Cir. 1998). These courts have reasoned that when a carjacker brandishes a firearm and orders a driver out of his car, it is reasonable for the driver, and for the jury, to infer that the carjacker is willing to use that firearm if the driver refuses to give up the car. Consequently, the presence of a gun establishes that "the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." *Holloway*, 526 U.S. at 3.

The evidence presented at trial established that Mr. Sanchez opened the truck door and shoved a gun into Mr. Tabarez's ribs. As the District Court correctly determined, this evidence is sufficient to establish that Mr. Sanchez possessed the intent required by § 2119. Because Mr. Sanchez's intent to seriously injure or kill a person if he refused to

turn over his car can be inferred by his brandishing of a firearm, and because Mr. Vallejos may be convicted of aiding and abetting in carjacking only if he shared some knowledge of Mr. Sanchez's intent, we must determine whether a reasonable jury could have concluded that Mr. Vallejos saw Mr. Sanchez draw the gun when he ordered Mr. Tabarez out of the truck. If it could, the jury could also reasonably infer that Mr. Vallejos knew that Mr. Sanchez intended to seriously injure or kill Mr. Tabarez if he did not give up the truck—thereby satisfying the Government's burden to demonstrate that Mr. Vallejos had the requisite intent to aid and abet the carjacking.

Relying on two decisions from the First Circuit, the District Court held that the evidence must establish that Mr. Vallejos knew "to a practical certainty" that Mr. Sanchez drew the gun. The court then concluded that the evidence was insufficient to support this conclusion and therefore entered a judgment of acquittal. We disagree with both the rationale of the District Court and the result reached by it.

To begin, the District Court misconstrued the two First Circuit cases on which it relied. In its discussion of *United States v. Evans-Garcia*, 322 F.3d 110 (1st Cir. 2003) and *United States v. Otero-Mendez*, 273 F.3d 46 (1st Cir. 2001), the District Court stated that "[i]n those cases, the First Circuit held that in order for the defendants to be guilty of aiding and abetting a carjacking, they must have known to a practical certainty that the principals possessed the conditional intent to inflict death or serious bodily harm." It then concluded that Mr. Vallejos did not know to a practical certainty of Mr. Sanchez's intent

because Mr. Vallejos never saw Mr. Sanchez draw the gun. Those cases, however, do not stand for this proposition. To the contrary, the First Circuit explicitly left open the question whether the Government must show that the defendant knew to a "practical certainty" of the principal's intent or whether it is sufficient to show that the defendant was simply "on notice" of such intent. *See Otero-Mendez*, 273 F.3d at 52; *Evans-Garcia*, 322 F.3d at 114. Clearly, then, the First Circuit has not held, nor has any other Circuit, that a conviction for aiding and abetting carjacking will stand only if the defendant knew to a practical certainty of the principal's intent.

Nevertheless, even if we were to require such a showing, we think that that standard is met here. Taken in the light most favorable to the Government, evidence at trial established that Mr. Sanchez told the women in the Monte Carlo to "watch this" just minutes before he took the truck. Mr. Vallejos was standing on the other side of the Monte Carlo, leaning into the passenger side window, when Mr. Sanchez made that statement; the jury could reasonably infer that Mr. Vallejos heard what Mr. Sanchez said and was paying attention to what was going to happen next. Thereafter, Mr. Sanchez and Mr. Vallejos approached Mr. Tabarez's truck. When Mr. Sanchez opened the driver's door and pulled out the gun, Mr. Vallejos was standing only about a foot behind him and slightly to Mr. Sanchez's right, giving Mr. Vallejos a clear line of vision to the gun. Mr. Vallejos then jumped into the bed of the truck over to the passenger side, where he pushed Mr. Gutierrez as he was getting out. Afterward, he watched Mr. Tabarez crawl

-10-

across the front seat and also get out from the passenger side. Mr. Sanchez yelled for Mr. Vallejos to "get in," and Mr. Vallejos complied. Given this evidence, a jury could find that Mr. Vallejos saw the gun and therefore had the requisite intent to aid and abet the carjacking.

The District Court placed a significant amount of weight on the fact that Mr. Vallejos is blind in his right eye and on Mr. Vallejos's testimony that his eyesight in his left eye is "not that good." The court determined that because of Mr. Vallejos's diminished eyesight, it would be unreasonable to conclude that he saw the gun despite being only a foot away from it. We disagree because the District Court failed to consider the totality of the evidence. First, we note that Mr. Vallejos himself was apparently the only one to testify about his vision in his left eye, and he testified only that it was "not that good." No specifics were mentioned, so the jury was left to decide for itself whether, and to what extent, Mr. Vallejos had diminished sight in that eye. Moreover, testimony indicated that Mr. Vallejos was standing only a foot behind Mr. Sanchez and had the gun in his direct line of vision. To determine that the only reasonable conclusion a jury could reach is that Mr. Vallejos did not see the gun would require evidence that Mr. Vallejos's eyesight was extremely impaired—evidence that was not presented to the jury in this case. Finally, evidence supported the Government's contention that Mr. Vallejos heard Mr. Sanchez tell the women to "watch this," from which the jury could infer that Mr. Vallejos was paying attention to what Mr. Sanchez was doing when he drew the gun

moments later.

Based on the evidence presented at trial, a reasonable jury could conclude that Mr. Vallejos saw Mr. Sanchez draw the gun as he was carjacking Mr. Tabarez's car. Because this establishes the requisite intent for aiding and abetting carjacking under 18 U.S.C. § 2119 and 18 U.S.C. § 2, the District Court's entry of judgment of acquittal based on lack of intent was erroneous. The jury's verdict shall be reinstated.

C.    Aiding and Abetting the Use of a Firearm During the Commission of a Crime of Violence

Aiding and abetting in the use of a firearm during a crime of violence under 18 U.S.C. § 924(c) requires proof that the defendant (1) knew his cohort used a firearm in the underlying crime and (2) knowingly and actively participated in that underlying crime. *See United States v. Wiseman*, 172 F.3d 1196, 1217 (10th Cir. 1999). Here, it is undisputed that Mr. Sanchez brandished the gun and pointed it toward Mr. Tabarez while ordering him out of the car. This satisfies the "use" requirement of the first element. *See United States v. Hager*, 969 F.2d 883, 889 (10th Cir. 1992) (holding that "'use' under § 924(c) is established when the defendant has ready access to the firearm and the firearm was an integral part of his criminal undertaking and its availability increased the likelihood that the criminal undertaking would succeed"). Moreover, we have already held that the evidence was sufficient for a reasonable jury to conclude that Mr. Vallejos saw Mr. Sanchez point the gun at Mr. Tabarez. Therefore, only the second element

-12-

remains in dispute.

The evidence at trial was sufficient for a jury to conclude beyond a reasonable doubt that Mr. Vallejos knowingly and actively participated in the carjacking. He was standing only a foot away from Mr. Sanchez when Mr. Sanchez drew the weapon and threatened Mr. Tabarez. Immediately thereafter, Mr. Vallejos jumped into the cab and over to the passenger door, where he pushed Mr. Gutierrez out and then jumped back in the cab as the truck sped away. Mr. Vallejos's actions in ensuring that the truck's occupants exited the vehicle, along with Mr. Vallejos's willingness to enter the truck with Mr. Sanchez in the driver's seat, provide a sufficient basis for a jury to conclude that Mr. Vallejos knowingly and actively participated in the carjacking. We therefore conclude that the District Court erred in granting judgment of acquittal on this count.

## III. CONCLUSION

A reasonable jury could conclude beyond a reasonable doubt that Mr. Vallejos saw Mr. Sanchez brandish a gun as he was carjacking Mr. Tabarez's truck. Therefore, the Government proved that Mr. Vallejos had the requisite intent to aid and abet the carjacking under 18 U.S.C. § 2119 and 18 U.S.C. § 2, and the District Court's entry of judgment of acquittal based on lack of intent was erroneous. A jury could also determine that Mr. Vallejos knowingly and actively participated in the carjacking after seeing Mr. Sanchez use the gun to order Mr. Tabarez out of the truck. Judgment of acquittal on the aiding and abetting in the use of a firearm during the carjacking under 18 U.S.C. § 924(c)

and 18 U.S.C. § 2 was also erroneous.  We therefore REVERSE and REMAND with instructions to reinstate the jury's verdict of guilty on both counts.

No. 04-2216, *United States v. Vallejos*

**McKAY**, Circuit Judge, dissenting:

This case arises under federal statutes which require that the accused carjack a vehicle by intending "to cause death or serious bodily harm," 18 U.S.C. § 2119, and that the accused brandish a weapon, 18 U.S.C. § 924(c)(1)(A)(ii). The jury convicted Defendant as an aider and abettor on both counts. The trial court set aside that verdict on the ground that there was insufficient evidence to support a finding that Defendant was aware of Mr. Sanchez's use of a gun. Aplt. App., Vol. I, at 93-94, 96. The record here clearly supports a finding that Mr. Sanchez used a gun. In order to reverse the trial court's holding, the majority necessarily relies entirely on its conclusion that "a reasonable jury could conclude [beyond a reasonable doubt] that [Defendant] saw Mr. Sanchez draw the gun." Maj. Op. at 12. I respectfully disagree.

The record evidence that supports the majority's conclusion is scant. The only direct evidence is Defendant's testimony that he did not see the weapon.[1] Aplt. App., Vol. III, at 382. However, viewing the evidence in the light most favorable to the government requires us to disregard this evidence because it is clearly inconsistent with the jury's verdict. Hence, we are left to decide whether the circumstantial evidence

---

[1]Indeed, Defendant testified that he did not even see Mr. Sanchez open the car door. Aplt. App., Vol. III, at 383 ("I was looking out towards the park, and I turned back around, [Mr. Sanchez] was already in the truck, he looked at me and he told me to get in.").

submitted is sufficient to support a finding beyond a reasonable doubt that Defendant saw the weapon.[2]

Only two witnesses offered by the prosecution saw the gun held by Mr. Sanchez. These two individuals were seated inside the car that was in the process of being stolen when they saw the weapon. Aplt. App., Vol. II, at 261, 286. The government's five other percipient witnesses, who were not inside the vehicle while it was being stolen, testified that they did not see Mr. Sanchez with a weapon. *Id.*, Vol. II, at 129, 132, 166, 178-79, 201, 223. One of those witnesses testified that he saw Mr. Sanchez open the driver side door of the vehicle and stick his hand inside the vehicle but did not see anything in his hand. *Id.* at 129, 132.

Notwithstanding the fact that no other witness saw Mr. Sanchez's gun, the majority concludes that Defendant saw the gun because of his close proximity to Mr. Sanchez when the gun was used. Maj. Op. at 10-11. The majority states that "Mr.

---

[2]The majority opinion makes much ado about the First Circuit's dilemma regarding the standard of proof requisite for an aider and abettor's intent; whether "the Government must show that the defendant knew to a 'practical certainty' of the principal's intent or whether it is sufficient to show that the defendant was simply "on notice" of such intent." Maj. Op. at 10 (citing *United States v. Otero-Mendez*, 273 F.3d 46, 52 (1st Cir. 2001); *United States v. Evans-Garcia*, 322 F.3d 110, 114 (1st Cir. 2003)). I agree with the majority's adoption of the First Circuit's reasoning to the extent that the government must demonstrate that Defendant "shared some knowledge" of Mr. Sanchez's criminal intent (proof of Defendant's criminal intent in this case boils down to whether he saw the gun); however, I see no need for discussion about "practical certainty" or "on notice" burdens of proof. The government must prove criminal intent beyond a reasonable doubt. *See Cannon v. Gibson*, 259 F.3d 1253, 1271-72 (10th Cir. 2001). I see no reason to depart from this practice in this case.

-2-

Vallejos [had] a clear line of vision to the gun," *id.* at 10; however, this assertion is not supported by the record.  To conclude that Defendant saw the gun, the majority impermissibly piles inference upon inference.[3]  *See United States v. Leos-Quijada*, 107 F.3d 786, 794 (10th Cir. 1997).

The majority also gives short shrift to a critical ingredient of the reasonable inference mix, Defendant's vision problems.  Maj. Op. at 11.  Defendant is blind in one eye and has limited sight in the other, which renders him sufficiently impaired to receive disability payments.  Aplt. App., Vol. III, at 378-79.  Because Mr. Vallejos receives disability, it is reasonable to infer that his vision is seriously impaired.  Making the inferential leaps that (1) Defendant was looking at Mr. Sanchez when the gun was drawn and (2) Defendant's eyesight is good enough to see the gun, that no other percipient witness was able to see, moves this case outside of the permitted reasonable inferences that we allow juries to make.  Beyond a reasonable doubt, these stacked inferences clearly are not.

I respectfully dissent.

---

[3]There would be no inferential piling problem had this case proceeded in state court as a simple robbery case, *see* N.M. Stat. Ann. § 30-16-2 (Michie 2004), to which Mr. Sanchez pled guilty.  But, as the majority correctly points out, the critical element of conviction in these federal offenses requires knowledge of the gun.  Under the majority's analysis, that was not proven.